I'd like to make a motion, and therefore, for these purposes, Judge Stoll will be presiding. I move the admission of Andrea Grace Clock-Mills, who's a member of the Bar and is in good standing with the highest courts of Virginia. I have knowledge of her credentials and am satisfied that she possesses the necessary qualifications. So, Gracie's been my law clerk for close to a year now, and she's been absolutely wonderful. I have no reservations that she will be a wonderful and productive member of our Bar. She's lovely to have in chamber. She's smart. She's thoughtful. She's hardworking. She's going to be an excellent addition to the Bar. And, really, I feel like I'm swearing in two of you at the moment, which is a first for me. So, you know, I'm happy to be able to make this motion, and I ask my colleagues to take it under advisement and consider whether they'll grant it. Judge Shaw, should we grant the motion? Yes, papers, supporting papers are all in order. We grant the motion. Okay, so please raise your right hand and face Jim. Do you solemnly swear that you will report yourself as an attorney and counsel at this court, uprightly and according to the law, and that you will support the Constitution of the United States of America? I do. Welcome to the Bar of the Court of Appeals of the Federal Circuit. Thank you. All right, now let's move on with our first case of today. Our first case is a consolidated oral argument. It's case 2017-1999 and 2018-1433. I understand that the clerk's office has explained to you that we're going to do 20 minutes for each side but hear both of those cases together since almost all the issues overlap. Okay? All right, so Mr. Yang, please proceed. Good morning, Your Honors. May it please the Court, meet me, Yang, on behalf of Appellant A.C. Technologies. There are two issues common to these appeals where the board erred. First, it looked at a single word, pieces, in a vacuum without considering the entire claim limitation, redundant storage of pieces of a complete file, in view of the remaining claim language in the specification. And second, it found the claims anticipated even though there's no substantial evidence to show that Rabinovich's algorithm actually operates independent of an access. I want to start with the second issue and then work my way back to the first. Specifically, the error with independent of an access is the board's anticipation determination is based on speculation that Rabinovich's algorithm could operate independent of an access instead of any specific disclosure within Rabinovich that the algorithm actually did operate independent of an access. I think that your most difficult point, it seems to me, is Dr. Ratner's testimony, isn't it? And whether or not that provides substantial evidence for the board's determination. No, Your Honor, because Dr. Ratner's testimony doesn't alter the meaning of the sentence. What I mean is the board found in this and several IPRs that independent of an access counts the number of accesses and only copies when the access count is non-zero. So in order to be independent of an access, Rabinovich has to disclose excluding host accesses from the access count. If Rabinovich discloses excluding host accesses, then it could anticipate. But if it doesn't, then it cannot. Dr. Ratner's testimony specifically is that a specific variable, CNT, parentheses, E, comma, X of S, is an indicator of future demand. And based on this testimony, the board concluded that a specific sentence within Rabinovich doesn't mean that host accesses are counted. But the problem with that is just because the variable is an indicator of future demand, that doesn't mean that the sentence doesn't also tell you to count host accesses. They're not mutually exclusive. The sentence could mean the variable is an indicator of future demand and still tell you to count host accesses. And if that's true, then the board couldn't have dismissed this explicit statement to count host accesses. But more importantly, no matter how you interpret the sentence, whether you interpret it to mean what it says on its face to count host accesses, or if you interpret it to mean what the board says it means based on Dr. Ratner's testimony, that particular sentence, it doesn't tell you to not count host accesses either way. Doesn't our case law say that it's not that a reference has to expressly say, hey, we're not going to perform this claim step. It's enough that the reference teaches a method in which that step isn't performed. Well, Your Honor, the specific claim requires that the steps be independent of an access. And if you look at the parameters that they're using, and if they're independent of the access of the computer unit as defined, mapped onto the reference, then isn't that enough? It would be if the board hadn't specifically found that the prior art isn't independent of an access because it counts the number of accesses. Access of the computer unit where the computer unit is the host, right? The benefit doesn't explicitly disclose one way or the other whether the host accesses are counted. Do you agree, though, that the law is that you don't have to express, it's okay if the reference doesn't expressly say that it's not performing something so long as it, in fact, is not performing it? My issue is that the reference doesn't... I understand what your issue is, that you don't think there's any support for the idea that there's access, that it's independent of access of the computer unit. That's correct. Okay, I understand your position. I just thought that maybe you were arguing something different with respect to the law, maybe requiring that a negative limitation has to be expressly taught. No, that's not what I'm saying. That's not what I'm saying at all. I'm saying that the negative limitation has to be possible for the negative limitation to be performed. In this case, there's no evidence either way whether this limitation is performed or not. There has to be some evidence that the limitation is actually performed. If I could use an analogy, let's say I have a recipe for sugar-free brownies and the prior discloses a brownie recipe where one of the ingredients is a white powder. If the white powder is sugar, then clearly the recipe isn't sugar-free. But at the same time, let's say the board said the white powder is baking soda. If the white powder is baking soda, that still doesn't disclose sugar-free brownies. Sugar can be one of the various other ingredients. And that's the exact same thing we have here. Just because the claims require independent of an access, and the board found that Rabinovich doesn't operate independent of access because accounts host accesses. But your example actually goes right to the heart of what Judge Stoll was asking you about and what you said you weren't arguing. You said if somebody says the white substance is baking soda, that doesn't mean one of the other ingredients couldn't be sugar. But if you're talking about a recipe, I've – personally, I love to cook. I've never seen a recipe that doesn't list all the ingredients that are meant to go into it. So if sugar isn't listed as one of the ingredients, but there is, in fact, a white powder listed, and then that white powder is determined to be baking soda, I don't see how that example of yours differs at all from the concern that Judge Stoll had, which is that you're requiring the teaching of sugar-free, even in the absence of sugar being listed as an ingredient. But in that case, you have to look at the other ingredients, and one of the other ingredients has to either disclose sugar or not. In this case, you have to look at Rabinovich's algorithm and see whether there's an actual disclosure of not counting host accesses, and there isn't. So where do you think that is in the algorithm? I'm saying that there is no disclosure anywhere within the document telling you whether to count host accesses or not. Do you want to move on to your pieces, Arjun? Before I do that, I'd like to make one clarification about the briefing. Appendix 2289 is a diagram that illustrates the copying limitations. It's the last page of the appendix. On this page, what I want to point out is that— Which appendix is this? Oh, I'm sorry, Your Honor. It's the 1999 appendix. Oh, okay. What page again? 2289. What I want to point out is that the claim requires two separate copying limitations. First, a computer unit A makes a copy to computer unit B, and then a computer unit B makes a copy to computer unit C. Those are marked as C, U, D, S, and D, S. And I also want to point out that Rabinovich itself discloses only a single copying step. A single host replicates to another host. The final written decision doesn't address this requirement of a second step, except to say that Rabinovich's algorithm can be performed. Likewise, on page 44 of the red brief, appellees argue, and I quote, Each host in Rabinovich periodically runs the replication algorithm. But what that means is when a single host runs the replication algorithm, that same host is making copies to other hosts. In other words, when host A runs the replication algorithm, host A copies to host B, and then host A continues to run the algorithm and copies to host C, and then host A copies to host D, and host A copies to host E, and so forth. But what the claims require is that host A copy to B, and then B copy to C. Clearly, A to B, and then A to C, and then A to D, using Rabinovich's algorithm, that's not the same as A to B, and then B to C as claimed. And that's another reason why there's no anticipation. So, if there's no questions, I'd like to move on to the pieces argument. The issue with pieces is that the board didn't consider the entire claim limitation, and certainly didn't consider it in view of the remaining claim language in the specification. There's no dispute over the construction of the word pieces itself, or what the word means, but the board's error is that the word pieces is the only thing that it did actually construe. It didn't explicitly construe the entire claim limitation, redundant storage of pieces of a complete file. And to the extent that it implicitly construed it, that construction is unreasonable because it fails to distinguish redundantly storing pieces of a file, just the pieces, and redundantly storing the entire file. Why was the board's reliance on the claim language at least one piece of data stored by a computer unit in a redundant manner? Why was that wrong? I mean, it seems to me that the board was looking at it and saying, well, it says you have to store at least one piece in a redundant manner, so that covers also storing all the pieces in a redundant manner. Right, but you still have to store the pieces in a redundant manner. It says at least one piece in a redundant manner.  I understand you're later, but the problem, okay. Your later limitations in the claim say, refer back with antecedent basis to the language at least one piece of data. So in every time you refer to a piece of data later in the claim, it refers back to at least one piece. That's correct. Why was the board's construction incorrect under the broadest reasonable construction? Because the board's construction failed to distinguish the difference between redundantly storing a piece and redundantly storing the complete file. If I could give, like, an analogy. What claim language do you rely on for showing that that's actually recited, where it says at least one piece of data? The claims require redundant storage of at least one piece of data. So the act of redundant storage must be performed on the at least one piece. Where does it say it has to be each piece individually redundantly stored? It doesn't say each piece must be redundantly stored. It says a piece must be redundantly stored. It says at least one piece must be. Right, so the act of redundant storage must be performed on the pieces. See, I don't understand that. So it says at least one piece. It is clearly contemplating multiple pieces. So why can't three pieces be redundantly stored together? There's nothing that prohibits that in the claim. But I'm saying that there's a distinction between redundantly storing pieces and redundantly storing the complete file. If I could give an analogy. How? Because the one to three that I just told you about. Okay. Okay. Counsel, you're being very disruptive. Sit back down. If you want to take a break and use part of your time to talk to him, that's fine. But I was in the middle of asking him a question, and you thought obviously what you had to tell him was more important than the question I had to ask. I apologize, Your Honor. If you look at the claims, what the claims say is. So I'm looking at Appendix 62. The claims say that the complete file or the. I've got the patent. Is there a particular claim you want me to look at? Yes. Please look at Claim 1 of the 125 patent. Okay. I've got that in front of me. It says that the computer unit stores one complete file of data. That's referring to storing the complete file. But then it says each file has a plurality of individual pieces, pieces containing parts of the file. That's referring to the fact that each complete file that's been stored is broken down into a plurality of individual pieces. And then the remaining claim language, the first element, starting with a set of instructions, that says at least one piece of data stored by a computer in a redundant manner. What that's referring to is that the one piece of data is being stored in a redundant manner, not the complete file. Or doesn't it say at least one piece? It does, but what has to be redundantly stored is the one piece, not the complete file. No, what has to be redundantly stored is the at least one piece. That's correct. So it could be the two pieces or the ten pieces or all of the pieces could be redundantly stored. But you have to redundantly store the pieces, not the complete file. That makes sense. Could I please give an analogy? Let's say if I told you I was buying a new car. In that example, you would expect that I would be driving out of a car dealership with a new car. If I showed you a muffler or an engine on a cinder block, that would make no sense to you. Likewise, if I told you that I was buying parts of a new car, then in that example you would understand that. And if I put a pie on the table in front of you, a whole pie, and I said feel free to take at least one piece with you, and you took the whole pie with you, you would have taken at least one piece with you. Yes, but I would have taken them in pieces. I wouldn't have taken the whole pie. Well, that wasn't my hypo. You took the whole pie in my case. You were a little piggy. What can I tell you? I did, but I took the pie in a piece-by-piece fashion. I didn't take the pie in a… Can I ask you something else moving on to the specification? I was a little puzzled by a block quote in your brief. It's on page 26. And here I think that you were trying to make the point that, you know, the specification really is just talking about pieces, and it's the block quote you have on page 26. But if I look at the full quote, you have some dot, dot, dots in here, and the full quote actually says that the invention is based on distribution of the entire data GD or the fields F to several cells. But you deleted the part where it says entire data GD. I mean, I'm confused by this because I think this disclosure in column 8 might suggest that you have redundant storage either of the fields or of the entire data GD. Right, but if you look at figure 2, figure 2 explains how the embodiments work. You're taking the entire data quantity GD and dividing it into little pieces. And then you're storing those little pieces in the cells. It doesn't matter that you may store all the little pieces. What we're doing is you're storing the little pieces on a piece-by-piece basis. The problem I'm having is your claims are written broader than that. They say storing at least one piece redundantly. And then the specification includes some support for the idea that you wanted to have coverage not just of redundantly storing fields F, but as it's in quoted column 8, lines 13, the entire data GD. So I understand there might be one embodiment where there's just fields, but you also seem to have wanted coverage of storing the entire file or entire data GD redundantly. I don't think that's true, Your Honor, because if you look at column 8, tell me how I'm misreading this language. I think what column 8 is referring to is that the result of this process is redundantly storing the entire file. But the way that the process works is it claims a specific implementation in which you divide the complete file into pieces, and then you store those pieces. You may store the complete file at the end of the process, but the way the process works is that you're storing them on a piece-by-piece basis. Okay, you're into your rebuttal time. Do you want to say the remainder? I would like to say the remaining time for rebuttal. Thank you. How do I say your name? Shabodin. Mr. Shabodin, please proceed. Good morning, Your Honor. May it please the Court, Dan Shabodin of Perkins Coie for Appellees Amazon and Blizzard, and with me today are Mr. Wing-Liang and Mr. Dan Bagateau. And I'll start with the pieces limitation, since that's where the argument left off with Mr. Yang. And Your Honors are correct that the claim says you store or you transfer at least one piece. So it can be more than one piece that is transferred and stored. And, in fact, the preamble says that the computer unit stores the complete file and it has the pieces of the file. So that language in the preamble also supports that the use of the word pieces does not preclude a device having the complete file as well. And we're operating still at this point under a broadest reasonable construction standard, correct? That's correct. So it certainly is a broader construction to say at least one piece can include the entire thing than it would be to say it has to be piece by piece, right? That's correct, Your Honor. So if the PTO's construction, even if I don't agree with it in a de novo sort of world where I'm trying to find the Phillips construction under the broadest reasonable construction so long as it's reasonable, a la supported by the spec, I have to leave it alone. That's correct, Your Honor. And the board found that there was nothing in the specification that limits how the transfer occurs, how the storage occurs, or any of the mechanics that AC has argued would somehow limit this to just storing just one piece as opposed to storing multiple pieces or storing pieces of parts of a file. And Dr. Ratner testified that when the pieces are stored Well, you say that there's nothing, but Figure 2 actually does that, right? Figure 2 does articulate embodiments where the pieces are stored. Typically, a single field F is stored, and then they go F to Z in a redundant pedometer by cell by cell. So you said nowhere in the spec does it disclose that, but doesn't it actually disclose that in Column 8? Well, it doesn't preclude, I'm saying nothing precludes storing the pieces as parts of storing the whole file. So, for example, in Figure 2 Is there anything that expressed the interest, the desire of doing that? Of doing what, Your Honor? Of storing the entire file redundantly. Well, I believe the portion of the specification that Your Honor pointed to at Column 8 says that you can redundantly store either the file or the pieces, where it refers to the entire data, GD. Well, boy, you might want to walk that statement back, because if you can redundantly store the file or the pieces, and those are two totally different things, then doesn't Claim 1, which says at least one piece, not include the whole file? The way you're using those words, you just made them seem like very distinct and different things. Well, I may have misspoken, Your Honor, then. As Dr. Ratner explained, when you store the pieces of a file, when the transfer occurs using the TCP IP protocol, the file is transferred in pieces, and those pieces are then stored on the receiving device, and they're organized, as Dr. Ratner stated, as bytes on the receiving device, and bytes are pieces of the file. So you do have pieces stored. Even when you store the complete file, it's stored in pieces organized as bytes. And so the specification actually doesn't use the word file anywhere. It doesn't use piece of a file anywhere. So the closest thing we have to that is the entire data set GD and the fields F. And so the fields F, I believe, are the closest thing in there to a byte. Can you pause for a second? I'm going to ask you to leave the courtroom if you do it again. I can't listen to him because you're talking so loudly that I'm unable to follow his argument, and that's really unfair. If you do it again, I will ask you to leave the courtroom. Please continue. Certainly. So we have a ‑‑ I'm sorry. I just derailed you. No problem, Your Honor. I couldn't follow what you were saying, so I'm sorry. And, in fact, I just wanted to point out that we also have dependent claims 3 and 10 that recite sending and receiving and storing pieces until the complete file has been transferred. So that shows that the first claim can't preclude that. There's nothing in the first claim that can be construed in a manner that would somehow prevent the transferring and storing of all of the pieces constituting a complete file. Do you want to address, please, the independently anticipation argument? Certainly, Your Honor. Thank you. So I can sort of set the context for this. There is an original host in Rabinovich that stores a file. It then transfers it in pieces over to a second host. So if we can consider the first one the original host, I'll call the second one host 2. And then Rabinovich says that every host runs this replication algorithm. So it's not just the original host that would be copying to other hosts, but Rabinovich says every host autonomously runs the replication algorithm. So host 2 would then run this algorithm, and if host 2, when the factors are right, such as host 2 has too much of a load, it would then offload the file to another host as well or replicate the file to another host. So that does, in fact, disclose the second replication that's required by the claims because every host in Rabinovich that receives a copy of the file would then run the replication algorithm and copy to another host when the factors are correct. And that would be independent of the original transferring computer. That's correct, Your Honor. And that's where the disclosure comes, you think. And that's the primary issue here is whether that second replication from host 2 to host 3 would be independent of an access of the original host. And one thing that AC argues broadly in the brief and here today about host accesses, and what is precluded is not a host access, it's an access of the original host. And the factors that are disclosed in the algorithm that are evaluated are accesses of what I've referred to today as host 2 or accesses directed to host 2 that pass through host 3. And that's the variable that's discussed in Rabinovich and in our briefs as count, it's abbreviated CNT, and then parentheses E comma X sub S. And what that variable means is it's a count of the number of requests directed to host 2 that pass through host 3. So host 2 is overloaded with work. It needs to replicate a copy of this file so another server can take on part of the burden of servicing clients. And it looks to where would be a good location to place this new replication of the file. And if most of the requests are coming to host 2 through host 3, host 2 knows that would be a good location. I'll put a copy at host 3 and that can then take on a lot of the burden. And so that's what that variable represents and it's explained in both Rabinovich and Dr. Ratner also discussed this at appendix 644. And he explained that it's a predictor of future demand for copies of the file. So that's how host 2 knows that host 3 would be a good location. And none of these variables depend on an access of the original host. And as your honors noted, the algorithm sets forth what we call the recipe. It lists everything that is used to decide whether to replicate the file. So if something's not listed... Five parameters, am I right in understanding there's kind of five parameters that it's looking at? There's a number of parameters. The one argued in AC's brief is that count EX sub S that I referred to. There's another one that's count SX which is the number of accesses of the second host. Are those the only access parameters? I believe that's correct, your honor. And in deciding that, then Dr. Ratner explained how that's a prediction of the demand on the host 3, the possible future demand on host 3, and so that's why host 3 would be a good location. And all of the parameters are set forth in the algorithm. And what isn't disclosed there is not a factor that's relied upon. As your honors noted, you say what the algorithm relies upon, then things not listed are not relied upon or excluded. And counsel said today they're not arguing that the algorithm needs to say what it excludes, but that's actually exactly what they argued in their reply brief. They underlined EX and exclude, and they say Rabinovich doesn't say it excludes that factor, the access of the original host, when in fact it's not listed anywhere in the algorithm, so it is excluded. Is there anything else that you feel like you need to cover? I don't believe so, your honor. Okay. Mr. Yang has some rebuttal time. Thank you, your honor. I just want to first briefly address the anticipation issue. The claims require a receipt of a copy and then making a copy based on the received copy. Rabinovich doesn't disclose receiving a copy and then replicating. All it does is disclose having a copy and then replicating. The claims, however, require receiving that copy first, which is the part that's not disclosed by Rabinovich. And then going back to the pieces issue, the first thing I want to point out is that the preamble distinguishes a piece from a complete file. These are two separate things. If I could direct you to claim one of the 125 patents, it explicitly says that it stores one complete file, and separately from that, that one complete file is divided into pieces, and then those pieces are redundantly stored. I'm sorry. What column and line number are you referring to? I'm sorry. Column 27, starting at line 30. It says that the computer unit stores at least one complete file of data. That's the complete file that is restored. And then the complete file is divided into individual pieces. And then the remaining claim steps store that piece of the complete file, not the complete file itself. And I also want to point out that the distinction that Mr. Shavodian is making undermines the entire purpose of this invention. If you were to say that you were redundantly storing the complete file and it redundantly stores the pieces just because each file has bits and bytes, then the normal course of redundantly storing complete files would meet all of these claim limitations. In that case, there would be no reason to draft the claims in such a way that it specifically says that the claims operate on a single piece and not on the complete file. It seems to me that when you're redundantly storing a single piece, what you're doing is you're storing that particular piece. You may be restoring other pieces as well, but the operation of the redundant storage occurs on the piece, not on the complete file. What you're doing is you're dividing the file into a plurality of pieces. And considering the operation of the step of redundant storage on each individual piece, and that's exactly what is illustrated by claim 2. I'm sorry, figure 2. In figure 2, you have the entire file GD, but instead of storing GD itself, 1 through 10, in each of the cells, it divides GD into pieces 1 through 10, and then it looks at each individual piece. It looks at each individual piece, and then it puts, for example, piece 8 into these specific pieces, into each of these specific cells. Now, plausibly, it could look at other pieces as well and put them into these cells, but what it's doing is it's looking at the pieces. It's not looking at the complete file. What Rabinovich does is it doesn't look at the pieces at all. It's just a file that's been copied over and over again. The file may have bits and bytes, but you're not looking at the bits and bytes when you're making the copies. You're looking at the complete file. So your view is that this claim requires that the file have to be in pieces, so even if the file was just cut in half, such that there were two halves, that would be two pieces, and then if each of those pieces were stored, even though it would result in the complete file being stored, that would satisfy the claim, but Rabinovich doesn't break it up into anything. It just stores the whole thing. Is that basically what your argument is? My argument is more than that. My argument is that after you break it up, you have to look at the pieces. Rabinovich not only doesn't break up any files, it doesn't look at any particular piece. What part of the claim requires you to look at the pieces? I thought we were talking about at least one piece of data stored by a computer unit in the redundant manner. Right, the redundant manner. When you're storing a piece in a redundant manner, what you're doing is you're looking at the piece and storing that piece in a redundant manner. You're not looking at the complete file and making duplicates of the complete file. You're looking at the specific piece and making sure that specific piece is being redundantly stored. Okay, thank you. Thank you, Your Honor.